**In re: Tony W. BRUCKER and Linda A. Brucker, Debtors.**

**TRANSAMERICA COMMERCIAL FINANCE CORPORATION, a corporation, Plaintiff,**

**v.**

**Tony W. BRUCKER and Linda A. Brucker, Defendants.**

**Bankruptcy No. 92–30848. Adv. No. 92–7089.**

United States Bankruptcy Court, D. North Dakota.

Jan. 8, 1993.

LaRoy Baird, Bismarck, ND, for plaintiff.

Tom Tuntland, Mandan, ND, for defendants.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is a motion filed on December 21, 1992, by the Debtors, Tony and Linda Brucker, seeking to dismiss the complaint filed by the Plaintiff, Transamerica Commercial Finance Corporation (Transamerica). In the complaint, Transamerica alleges that the Debtors' debt obligation owing to it is not dischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). The Debtors, in their motion to dismiss, contend that this court lacks jurisdiction to hear and decide Transamerica's action because Transamerica has failed to timely file its complaint within the 60 days following the date set for the first meeting of creditors as mandated under Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. In response to the motion, Transamerica argues that Rule 9006(f) of the Federal Rules of Bankruptcy Procedure extended its deadline for filing the complaint by three days and that even if there was a delay in the filing of the complaint, it is due to an "excusable neglect."

1.

The facts are not in dispute. On August 31, 1992, the Debtors filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. Transamerica was present during the first meeting of creditors held on September 25, 1992. In the court's "Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates," Transamerica was informed that the deadline to file a complaint to determine the dischargeability of a debt was November 24, 1992, pursuant to Rule 4007(c). Transamerica filed its

complaint to declare the debt nondischargeable on November 25, 1992, one day after the deadline set by the court and sixty-one days after the first meeting of creditors. The Debtors received their discharge prior to Transamerica filing its complaint on the same date.

The affidavit of Maxann Norris, the secretary of the law firm representing Transamerica, notes that she was aware of the November 24, 1992 deadline and that she had obtained an expense check for the adversary filing fee by November 13, 1992. Norris was responsible for typing the adversary complaint, preparing the summons and ensuring the same was sent for filing with the Bankruptcy Court. On November 23, 1992, after preparing the package for shipment with Federal Express, she hand-delivered the same to the inter-building courier service used by the tenants in the bank building where she worked with specific instructions that the package was to be immediately taken to the Federal Express drop box for shipment that day. Because she had used the courier service on many occasions, she was confident that the instructions would be carried out. The package was picked up by the courier runner on November 23, 1992. The events that immediately transpired thereafter are uncertain, but what is known is that the package was not picked up by Federal Express until November 24, 1992, at the Provident Life Building drop box and not at the usual drop box located in the Norwest Bank Building.

### 2.

The court will first address Transamerica's belief that it had three additional days in which to file its complaint under Fed.R.Bankr.P. 9006(f).

The period for which a section 523(c) dischargeability complaint may be filed is governed exclusively by Fed.R.Bankr.P. 4007(c). *In re Duncan*, 86 B.R. 288 (Bankr.M.D.Fla.1988). Rule 4007(c) provides that:

A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).... On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Implicitly, Rule 4007(c) also covers any extension of time for filing an adversary action. Fed.R.Bankr.P. 9006(b)(3); *In re Perrin*, 55 B.R. 401 (Bankr.D.N.D.1985). Under Rule 4007(c), the party desiring additional time in which to file a complaint must show cause and must file it before the expiration of the prescribed deadline. Although Transamerica failed to make a request for an extension before or after the 60 days deadline, which was November 24, 1992, it argues that it was not late with its filing because Rule 9006(f) allows it an additional three days to file its complaint objecting the Debtor's discharge.

Rule 9006(f) provides that "[w]hen there is a right or requirement to do an act ... within a prescribed period after service of a notice ... and the notice ... is served by mail, three days shall be added to the prescribed period." Because Rule 9006(f) is analogous to Fed.R.Civ.P. 6(e),[1] courts have relied on precedents interpreting the latter to resolve disputes concerning Rule 9006(f). *Matter of Robintech, Inc.*, 863 F.2d 393 (5th Cir.1989). Our own circuit's analysis of Fed.R.Civ.P. 6(e) provides some helpful insights. The Eighth Circuit acknowledges that courts have consistently refused to interpret Rule 6(e) as allowing extensions of jurisdictional time limits. *Monark Boat Co. v. N.L.R.B.*, 708 F.2d 1322, 1328 (8th Cir.1983). In *Merrill Lynch, Pierce, Fenner & Smith v. Kurtenbach*, 525 F.2d 1179 (8th Cir.1975), the plaintiff therein filed his notice of appeal three days late and contends that the application of Fed.R.Civ.P.

---

**1.** Rule 6(e) provides:

Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

6(e) would make his notice of appeal timely since the service was made by mail. The *Merrill Lynch* court rejected such an argument. It determined that Rule 6(e) has no application when determining the time for the appeal notice and that the time for appeal begins to run from the entry of the judgment rather than the service of notice. *Id.* at 1181.

■ Similarly, Fed.R.Bankr.P. 9006(f) plainly points to the doing of some act in a prescribed period after service of a notice and has no application when determining the period to file a complaint objecting the dischargeability of a debt since the time frame established in Fed.R.Bankr.P. 4007(c) regarding a section 523 action is more specific. Rule 4007(c) is not precipitated by the service of notice, but rather by the occurrence of an event, the first meeting of creditors. The court in *Duncan, supra,* stated in reference to Rule 4007(c) that:

> The rule specifically refers to filing complaints. Thus the time period described under Rule 4007(c) is more akin to a statute of limitations or the time period in which to file a responsive pleading in that the date set for the § 341(a) creditors' meeting triggers the running of the time period and the person possessing the right to act is barred by the failure to act within the prescribed period. To hold otherwise here or in similar cases where the debtor has been discharged would inject uncertainty and confusion into the proceedings and is contrary to the policy of providing finality in bankruptcy proceedings.

86 B.R. at 289.

This court agrees with the *Duncan* ruling that Rule 4007(c) is more similar to a statute of limitations in that any creditor who wishes to file a complaint to determine the dischargeability of any debt more than 60 days after the first meeting of creditors is barred from doing so. In the present case, Transamerica's complaint was not timely filed within the time prescribed nor did it seek an extension of time. Rule 4007(c) does not provide the court with any other alternative method in which to en-large the filing period. That period expired on November 24, 1992. Accordingly, Transamerica's argument that Rule 9006(f) extended the bar date to file its complaint by three days is meritless.

3.

Relying on Fed.R.Bankr.P. 9024, Transamerica applies Fed.R.Civ.P. 60(b) to urge the court to accept its proposition that the circumstances surrounding the late filing of the complaint was the result of "excusable neglect." Transamerica maintains that it should not be punished for the fault of the courier service who allegedly failed to deposit the complaint with the Federal Express in a timely fashion.

■ The court is not persuaded by Transamerica's argument. In *Benoist v. Brotherhood of Locomotive Eng'rs,* 555 F.2d 671 (8th Cir.1977), the court determined that excusable neglect may only be found where "a party has failed to learn of an entry of judgment, or in extraordinary cases where injustice would otherwise result." *Id.* at 672; *see also, General Elec. Co. v. Lehnen,* 974 F.2d 66 (8th Cir.1992). Although *Benoist* addressed the excusable neglect issue in the context of a federal appellate rule, the principle therein is applicable to the case at hand. Transamerica was informed of the first meeting of creditors held on September 25, 1992. In fact, in its complaint, it admitted that it attended the first meeting. Having concluded that Transamerica knew of the first meeting date, Transamerica's only recourse now is to establish that the mail courier's failure to deposit the mail package in the Federal Express box in a timely manner is an extraordinary case and that it would cause injustice and harm to it. The party seeking any extension of time has the heavy burden of proving excusable neglect. *Vogelsang v. Patterson Dental Co.,* 904 F.2d 427 (8th Cir.1990).

■ The facts in the Eighth Circuit opinion, *Vogelsang, supra,* are similar to those found in the present case. In *Vogelsang* an attorney, immediately following an adverse judgment on his claim, drafted, signed, and dated a notice of appeal prior

to departing on a trip. The notice was deposited in the mail addressed to the district court clerk six days before the notice of appeal was due. The clerk's office, however, never received the said notice, and consequently, the notice was not filed within the allotted time. The attorney then filed a motion for time extension after the expiration of the original appeal period claiming excusable neglect. The *Vogelsang* court affirmed the district court's decision denying the attorney's request and concluded that no excusable neglect was present to justify a late filing. *Id.* at 431. Excusable neglect cannot be found where the delay is caused by an attorney's oversight or busy schedule.

The *Vogelsang* court then went on to quote from the United States Supreme Court case, *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), expressing concerns over the use of the postal service with respect to excusable neglect and timely filings. The quotation is as follows:

> Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); *and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it.* *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them.

*Vogelsang* 904 F.2d at 431–32 (quoting *Houston,* 487 U.S. at 271, 108 S.Ct. at 2382–83).

Obviously, Transamerica could have chosen not to use the inter-building courier service and instead could have hand-delivered the package containing the pleading directly to the Federal Express carrier. It could have additionally called the clerk's office to ensure the safe arrival of the pleading. Whenever a mail carrier is being used, certain risks are involved and precautions must be taken. For example, in the case of *Chrysler Motors Corp. v. Schneiderman,* 940 F.2d 911 (3d Cir.1991), the court determined that the creditor's failure to timely deliver its proof of claim to the clerk of court via mail was a conscious selection of a delivery procedure and not a neglectful oversight. As one court noted, "[w]hen counsel's inability to act is the result of events that could reasonably have been anticipated, courts will not find excusable neglect." *In re Aponte,* 91 B.R. 9, 12 (Bankr.E.D.Pa.1988). Accordingly, from the discussion above, the court finds that the circumstances surrounding Transamerica's failure to file a timely complaint does not constitute excusable neglect.

Although this outcome may appear harsh, courts have consistently ruled that an excusable neglect must arise from extraordinary situations and cannot be used as a vehicle for relief because of an attorney's incompetence or carelessness. *See, e.g., In re Analytical Systems, Inc.,* 933 F.2d 939 (11th Cir.1991) (A creditor's reliance on the misrepresentations of her husband did not constitute excusable neglect because it was not a circumstance beyond her reasonable control.); *In re Robintech, Inc.,* 863 F.2d 393 (5th Cir.1989) (Delay in the receipt of notice for filing proofs of claim because of improper address did not constitute excusable neglect.); *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310 (8th Cir.1987) (Employee turnover which precipitated the late filing does not constitute excusable neglect because employer could have prevented the delay by exercising diligence.); *Clinkscales v. Chevron U.S.A., Inc.,* 831 F.2d 1565 (11th Cir.1987) (An attorney's busy practice is not sufficient to establish excusable neglect under Fed.R.Civ.P. 6(b)); *Sutherland v. ITT Continental Baking Co., Inc.,* 710

F.2d 473 (8th Cir.1983) (An attorney's failure to appear at trial is insufficient to form the basis for Rule 60(b)'s excusable neglect relief.); *Selph v. Council of Los Angeles,* 593 F.2d 881 (9th Cir.1979) (The confusion that resulted from moving law office does not rise to the level of excusable neglect.); *In re Aponte, supra,* (An attorney's busy involvement in state court litigation did not rise to the level of excusable neglect.).

The extraordinary situations where the excusable neglect claim has been accepted often involve pro-se individuals who do not have access to adequate representation by an attorney. In *Weekley v. Jones,* 927 F.2d 382 (8th Cir.1991), an extension for filing the notice of appeal was granted to a pro-se prisoner who was on medication and was suffering from borderline mental retardation and paranoid schizophrenia. The United States Supreme Court expressed the same concerns in the pro-se prisoner's case, *Houston, supra,* noting that pro-se prisoners cannot take certain precautions which attorneys are obligated to perform.

Having failed to persuade the court that Fed.R.Bankr.P. 9006(f) provides it with three additional days in which to file its complaint and having failed to establish that the one day delay in filing the complaint was the result of excusable neglect, Transamerica's complaint must be dismissed.

Accordingly, IT IS ORDERED that the Debtor's motion to dismiss the complaint of Transamerica Commercial Finance corporation be and is hereby GRANTED due to Transamerica's failure to commence its action within the time limits prescribed by Fed.R.Bankr.P. 4007(c).

JUDGMENT MAY BE ENTERED ACCORDINGLY.