METROPOLITAN FEDERAL BANK OF IOWA, F.S.B., Metropolitan Federal Bank of Minnesota, F.S.B., and Metropolitan Federal Bank, F.S.B.

v.

W.R. GRACE & CO., W.R. Grace & Co.–Conn., and United States Gypsum Company.

No. 3–90 CIV 436.

United States District Court,
D. Minnesota,
Third Division.

Feb. 28, 1992.

Arntson & Stewart by Jon M. Arntson, Fargo, N.D. and Speights & Runyan by Daniel A. Speights, Hampton, S.C., for plaintiffs.

Popham, Haik, Schnobrich & Kaufman by Hugh V. Plunkett and Keith J. Halleland, Minneapolis, Minn., for defendants W.R. Grace & Co. and W.R. Grace & Co.–Conn.

Zelle & Larson by Sandra Wallace, Minneapolis, Minn. and Morgan, Lewis & Bockius by Dennis J. Valenza, Philadelphia, Pa., for defendant U.S. Gypsum Co.

## ORDER

ALSOP, Chief Judge.

This is an asbestos property damage action involving seven buildings—three in Minnesota, two in Iowa, one in North Dakota and one in South Dakota. This matter came on for hearing before this court upon the joint motion for summary judgment of defendants W.R. Grace & Co.–Conn. ("W.R. Grace") and United States Gypsum Company ("USG"), on the theory that plaintiffs' claims are barred by the statute of limitations. While this motion was under advisement, plaintiffs moved for voluntary dismissal of all of its claims relating to the non-Minnesota buildings. USG does not oppose plaintiffs' motion for voluntary dismissal but W.R. Grace does oppose the motion.

### I. MOTION FOR VOLUNTARY DISMISSAL

■ Federal Rule of Civil Procedure 41(a)(2) provides that, once an answer or a motion for summary judgment has been served, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side. Courts generally will grant dismissals where the only prejudice the defendant will suffer is that resulting from a subsequent lawsuit." *Paulucci v. City of Duluth*, 826 F.2d 780, 782 (8th Cir.1987). The loss of a valid statute of limitations defense is not necessarily a bar to a dismissal pursuant to Rule 41(a)(2). *See, e.g., McCants v. Ford Motor Co., Inc.*, 781 F.2d 855 (11th Cir.1986).

■ In the instant case, the court concludes that defendant W.R. Grace & Co.– Conn. will suffer no legal prejudice due to dismissal without prejudice of plaintiffs' claims related to non-Minnesota buildings, so long as said dismissal is subject to the following conditions:

1. All discovery taken in the instant case shall be available for use in any subsequent action involving the subject non-Minnesota buildings, including use at trial;

2. Plaintiffs shall reimburse defendants for costs and attorney's fees directly related to the litigation of issues on the non-Minnesota buildings which will not be relevant to any subsequent action in another jurisdiction. Defendants shall submit to the court, within fifteen days of the date of this order, a statement of the amount of such costs and attorney's fees.

### II. SUMMARY JUDGMENT ON MINNE-SOTA BUILDINGS

Because it is granting plaintiffs' motion for voluntary dismissal of claims relating to non-Minnesota buildings, the court will address the defendants' summary judgment motion only as it relates to the buildings in Minnesota.

### A. *Undisputed Facts*

Plaintiffs filed the complaint in this action on June 29, 1990 in United States District Court for the District of Minnesota. Service on the defendants was not made until between July 12 and 14, 1990. Plaintiffs' complaint seeks to recover the costs of abatement of asbestos-containing materials allegedly present in its buildings. Although the original complaint does not specify precisely which buildings are at issue, plaintiffs assert claims relating to three buildings located in Minnesota. The Minnesota buildings are: 1) the First Minnesota Savings Bank in Edina, Minnesota, acquired by plaintiffs in April, 1986; 2) Peoples Savings and Loan Association building in Albert Lea, Minnesota, acquired by plaintiffs in August, 1988; and 3) First Federal Savings and Loan in Brainerd, Minnesota, acquired by plaintiffs in August, 1988. Plaintiffs contend the Edina, Minnesota building contains a USG product containing asbestos, while the other two buildings contain an asbestos product from W.R. Grace.

It is undisputed that all of these buildings were substantially completed over ten years ago, the latest being completed in 1975. Thus, plaintiffs are obviously not the original owners of any of these build-

ings. Plaintiffs estimate that the total damage to these Minnesota buildings is approximately $600,000.00.

### B. *Discussion*

Defendants seek summary judgment on the basis that *Minn.Stat.* § 541.051 bars plaintiffs' claims. Section 541.051 provides in relevant part:

Subdivision 1. (a) *Except where fraud is involved, no action* by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, *shall be brought* against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction or the improvement to real property or against the owner of the real property *more than two years after discovery of the injury* or, in the case of an action for contribution or indemnity, accrual of the cause of action, *nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.*

Defendants contend that plaintiffs' claims are barred by this statute because plaintiffs discovered or should have discovered its injury more than two years before filing suit, and in any event because the buildings at issue were substantially completed well over ten years ago.

In asserting that their claims are timely, plaintiffs seek to rely upon *Minn.Stat.* § 541.22, subd. 2, an asbestos revival statute, which provides that:

Subd. 2. Limitation on certain asbestos actions. Notwithstanding any other law to the contrary, an action against a manufacturer or supplier of asbestos or material containing asbestos to recover for (1) removal of asbestos or material containing asbestos from a building, (2) other measures taken to locate, correct, or ameliorate any problem related to asbes-

tos in a building, or (3) reimbursement for removal, correction, or amelioration of an asbestos problem that would otherwise be barred before July 1, 1990, as a result of expiration of the applicable period of limitation, is revived or extended. *An asbestos action revived or extended under this subdivision may be begun before July 1, 1990.*

(emphasis added).

In the alternative, plaintiffs contend that even under section 541.051, its claim is not barred because it could not have discovered its injury more than two years ago, and that defendants' fraudulent concealment tolls the ten-year limitation.

### 1. The Revival Statute— Minn.Stat. § 541.22

■ It is undisputed that although plaintiffs filed their complaint with the court on June 29, 1990, service on the defendants was not achieved until after July 1, 1990. A federal court in a diversity action must follow state substantive law to determine when an action is commenced within the meaning of the state statute of limitations. *Walker v. Armco Steel*, 446 U.S. 740, 752–753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1988). Rule 3 of the Minnesota Rules of Civil Procedure provides that a civil action is commenced upon service of the summons on the defendant. Plaintiffs' action was therefore not commenced before July 1, 1990 and thus is not revived by section 541.22.

■ Plaintiffs argue that the revival statute uses the term "begun" instead of "commenced," and that under the "real world" meaning of "begun," plaintiffs began this lawsuit on June 29, 1990. Plaintiffs' ingenious argument notwithstanding, the court finds no significance to the difference in wording in these provisions. Throughout the Minnesota statutes, the Minnesota Legislature appears to use the words "begin" and "commence" interchangeably. *See, e.g., Minn.Stat.* §§ 541.09, 541.02, and 541.04. *See also Concordia College Corp. v. W.R. Grace & Co., et al.*, Civ. 3–90–0435 (D.Minn. Order dated Nov. 16, 1991) (holding on identical facts

that *Minn.Stat.* § 541.22 does not revive plaintiff's action).

### 2. Application of Section 541.051 [1]

The buildings at issue in this case were all substantially completed more than ten years before plaintiffs commenced this lawsuit. The ten-year time limit in section 541.051 is a period of repose, in that a claim brought outside of that period is automatically barred regardless of whether a plaintiff could have discovered its cause of action within that period. The single exception is for cases "where fraud is involved." Minnesota courts have interpreted this language to toll the ten-year time limit where the defendant has fraudulently concealed a defective and unsafe condition and thereby prevented plaintiff from discovering its cause of action. *See Wittmer v. Ruegemer,* 419 N.W.2d 493, 497 (Minn. 1988); *Independent School Dist. No. 197 v. W.R. Grace & Co., et al.,* 752 F.Supp. 286, 289–90 (D.Minn.1990).

In *Wild v. Rarig,* 302 Minn. 419, 450, 234 N.W.2d 775, 795 (1975), the Minnesota Supreme Court described fraudulent concealment in the following terms:

> The concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.

Mere silence or failure to disclose is not sufficient in itself to constitute fraudulent concealment. *Id. See also Goellner v. Butler,* 836 F.2d 426, 431 (8th Cir.1988).

To avoid summary judgment based on section 541.051, plaintiffs must come forward with evidence sufficient to create a genuine issue of material fact as to the defendants' fraudulent concealment of plaintiffs' causes of action. *Independent School Dist. No. 197,* 752 F.Supp. at 289. To this end, plaintiffs have submitted a lengthy attorney affidavit, with supporting documents attached, describing in narrative form the defendants' alleged knowledge of the hazards of asbestos and their continued marketing of asbestos-containing products despite such knowledge. The affidavit also alleges improper conduct on the part of defendant USG in failure to disclose critical documents in response to discovery requests in other asbestos litigation.

While the materials submitted by plaintiffs cast a dark shadow over past conduct of defendants, the materials do not create a genuine issue of material fact on fraudulent concealment in the instant case. Plaintiffs present no evidence specifically relating to the three buildings at issue here. At most, the general information contained in plaintiffs' materials indicates that defendants may have sold asbestos-containing products to the original owners of these buildings without disclosing the presence or hazardous nature of asbestos. This alone does not establish fraudulent concealment. Plaintiffs have proffered no evidence of affirmative acts of these defendants intended to prevent discovery of the allegedly defective condition in these particular buildings. The closest plaintiffs come to such a showing is in the production of affidavits of two architects involved in the construction of two of the non-Minneso-

---

**1.** Plaintiffs have argued that section 541.051 does not apply to plaintiffs' claims because the statute is not retroactive. Plaintiffs correctly cite *Lovgren v. Peoples Elec. Co., Inc.,* 380 N.W.2d 791 (Minn.1986), for the proposition that section 541.051 does not apply retroactively. Applying section 541.051 to plaintiffs' claims in this case, however, is not a retroactive application. The effective date of section 541.051 was August 1, 1980. Plaintiffs acquired the Minnesota buildings at issue in 1986 and 1988, plaintiffs claim to have discovered the alleged defective condition in the buildings less than two years prior to filing suit, and plaintiffs filed suit in 1990. Because plaintiffs' claims arose, were discovered, and were commenced after the

effective date of section 541.051, the limitations of that statute apply. The mere fact that the buildings at issue were constructed prior to August 1, 1980 does not render application retroactive. *See, e.g., Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448 (Minn.1980) (applying section 541.051 to building improvements substantially completed in 1965); *Lourdes High School v. Sheffield Brick & Tile Co.,* 870 F.2d 443 (8th Cir.1989) (applying section 541.051 to construction substantially completed in 1959); *Independent School Dist. No. 197 v. W.R. Grace & Co., et al.,* 752 F.Supp. 286 (D.Minn.1990) (applying section 541.051 to buildings substantially completed in 1971).

ta buildings which were originally involved in this litigation. Those affidavits indicate that the original owners of those buildings may have relied on representations of W.R. Grace that its fireproofing material was safe and suitable for use. Plaintiffs have no similar affidavits involving the buildings at issue in this case. Under these circumstances, plaintiffs' claims are barred by the ten-year time limit of section 541.051.

Because plaintiffs' claims are barred by the ten-year time limit of section 541.051, the court need not address whether the claims survive the two-year time limit of section 541.051.

Accordingly, upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED That:

1. Plaintiffs' motion for voluntary dismissal of all of its claims relating to the non-Minnesota buildings is GRANTED;

2. Plaintiffs' claims relating to non-Minnesota buildings are DISMISSED without prejudice subject to the following conditions:

   a. All discovery taken in the instant case shall be available for use in any subsequent action involving the subject non-Minnesota buildings, including use at trial;

   b. Plaintiffs shall pay costs and attorney's fees to defendants in an amount to be determined by the court;

3. Defendants' joint motion for summary judgment is GRANTED to the extent of plaintiffs' claims relating to buildings in Minnesota;

4. Plaintiffs' complaint is DISMISSED with prejudice to the extent it asserts claims relating to buildings located in Minnesota; and

5. The Clerk of Court shall enter judgment as follows:

   IT IS ORDERED, ADJUDGED AND DECREED That to the extent plaintiffs' complaint asserts claims related to buildings outside of the State of Minnesota, plaintiffs' complaint is dismissed without prejudice; to the extent plaintiffs' complaint asserts claims relating to buildings located

within the State of Minnesota, plaintiffs' complaint is dismissed with prejudice.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That all discovery taken in the instant case shall be available for use in any subsequent action involving the non-Minnesota buildings which were at issue in this case, including use at trial; and plaintiffs shall pay costs and attorney's fees to defendants in an amount to be determined by the court.