**James LARSON, Plaintiff,**

v.

**FARMERS COOPERATIVE ELEVATOR OF BUFFALO CENTER, IOWA, an Iowa cooperative, and Farmers Cooperative Company, Ledyard, Iowa, an Iowa cooperative, Defendants.**

No. C 96–3138–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Aug. 5, 1999.

David L. May, Hawkins & Norris, Des Moines, IA, for Plaintiff.

Richard K. Updegraff, Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, IA, for Defendants.

## ORDER REGARDING DEFENDANTS' MOTION FOR AN EXTENSION OF TIME TO FILE A NOTICE OF APPEAL

BENNETT, District Judge.

Sometimes you can "keep your eye on the ball" so assiduously that you forget to

watch for the out-of-bounds line. Here, although defendants' counsel recognized the deadline for filing his notice of appeal, he very nearly overlooked the proper district in which to file it. Was the defendants' counsel's failure to file a timely notice of appeal in the proper district the result of "excusable neglect" permitting the court to extend the pertinent deadline pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure? The defendants have posed that question, but the plaintiff argues emphatically that the answer should be "No!"

This hedge-to-arrive (HTA) case comes before the court pursuant to the defendant Elevators' August 2, 1999, motion for an extension of time for filing a notice of appeal under Federal Rule of Appellate Procedure 4(a)(5). Plaintiff James Larson resisted the motion on August 4, 1999.[1] Both parties requested oral arguments on the motion, and in particular, Larson requested that such arguments be expedited to avoid a "jurisdictional tangle" with Larson's own motion, now pending before the Eighth Circuit Court of Appeals, to dismiss the Elevators' appeal as untimely. The court therefore heard telephonic oral arguments on the Elevators' motion on August 4, 1999.

The notice of appeal in this case, the parties agree, was due July 12, 1999, but was not received and filed by the Clerk of Court for the Northern District of Iowa until July 14, 1999. The Clerk therefore notified the Elevators' counsel by mail that the notice of appeal was untimely filed. At some point thereafter, Larson moved the Eighth Circuit Court of Appeals to dismiss the Elevators' appeal as untimely, which leaves both this court and the appellate court with essentially the same question, albeit in slightly different postures.

In support of his motion in this court, the Elevators' counsel asserts that his failure to file the notice of appeal in timely fashion was the result of his belated realization that the order denying his motion for new trial, filed on June 11, 1999, still indicated that this was a matter before the district court of the Northern District of Iowa, although it had been tried in Des Moines, Iowa, which lies in the Southern District of Iowa, with Southern District Jurors. Because the presiding judge would have to travel from his home base in Sioux City, Iowa, wherever this Central Division case was tried, prior to trial, the court offered the parties the option of trying the case in Fort Dodge, as originally venued, or in Des Moines, which was actually more convenient for the parties and witnesses and where counsel for both parties have their offices. The parties and the court agreed that trial in Des Moines was more convenient and agreed to try the case there with jurors drawn from the Southern District. Notwithstanding the change of venue for the trial, the case remained a matter pending before the District Court for the Northern District of Iowa.

When counsel came to the belated realization that he was about to hand-deliver his notice of appeal for filing in the wrong district, the Southern District, he instead mailed the notice of appeal to the Clerk of Court in the Northern District of Iowa. He asserts that his error should constitute "excusable neglect," citing the "liberalized" standards articulated, *inter alia*, in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). He contends that it is clear that, had he delivered the notice of appeal to the Clerk of the Southern District in Des Moines, as he had intended, such inadvertence would have been excusable neglect. He therefore asks the court to extend the time for filing his notice of appeal to July 14, 1999.

Plaintiff's counsel asserts that, even under the liberal standard of *Pioneer*,[2] noth-

---

1. The court received a courtesy copy of the plaintiff's resistance by facsimile on August 3, 1999.

2. In passing, counsel for plaintiff opined that *Pioneer* was not the applicable standard, not

because the case actually involves Bankruptcy Rule of Procedure 9006(b)(1), rather than Federal Rule of Appellate Procedure 4, but because "(a) two members of the *Pioneer* majority have retired; and, (b) recent language

ing resembling "excusable neglect" has been shown in this case, because nothing reasonably suggested that any court other than the Northern District of Iowa was the proper court in which to file the Elevators' notice of appeal and the Elevators' counsel is experienced in federal litigation and application of the federal rules of civil and appellate procedure.

■ Rule 4 of the Federal Rules of Appellate Procedure provides, in pertinent part, that "[i]n a civil case, except as provided in [circumstances not present here], the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered, [but][i]f a party timely files in the district court [a motion for new trial under Rule 59], the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." FED.R.APP.P. 4(a)(1) & (4). The ruling on a motion for new trial in this case was filed on June 11, 1999, thus setting the thirty-day clock running with a deadline of July 12, 1999. Furthermore, the Rule provides that "[t]he district court may extend the time to file a notice of appeal if . . . a party so moves no later than 30 days after the time pre-

scribed by this Rule 4(a) expires; and . . . that party shows excusable neglect or good cause." FED.R.APP.P. 4(a)(5). Only "excusable neglect," not "good cause" is applicable when the party moves for an extension after the time for filing a notice of appeal has run. *See Metropolitan Fed. Bank of Iowa v. W.R. Grace & Co.*, 999 F.2d 1257, 1259 (8th Cir.1993) ("Because this motion was filed after the original thirty days time for notice of appeal had passed, Metropolitan was required to show excusable neglect rather than mere good cause.") (citing *Bartunek v. Bubak*, 941 F.2d 726, 728 (8th Cir.1991)).

■ The standards applicable to the present motion were explained by the Eighth Circuit Court of Appeals in *Fink v. Union Central Life Ins. Co.*, 65 F.3d 722 (8th Cir.1995):

Federal Rule of Appellate Procedure 4(a)(5) permits the district court to extend the time for filing an appeal if the party seeking the extension shows excusable neglect. The Finks contend the district court should have granted their motion to extend the time for filing a notice of appeal, because misaddressing their envelope is excusable neglect. The

in *Stutson v. U.S.*, 516 U.S. 193, 116 S.Ct. 600, 133 L.Ed.2d 571 (1996) [ (*per curiam* ) ], suggests that the Supreme Court does not consider the issue to be closed." Neither ground supports rejecting the *Pioneer* standard here.

The court has reviewed the *Stutson* decision, and can find nothing in a decision requiring remand to the Eleventh Circuit Court of Appeals to reconsider denial of an extension to file a notice of appeal in light of *Pioneer* as suggesting that *Pioneer* is not the applicable standard in Rule 4 cases. *See Stutson*, 516 U.S. at 198, 116 S.Ct. 600. Indeed, the Court, in justifying its remand, made much of the fact that the Eleventh Circuit Court of Appeals had failed to consider the unanimous position of all other Circuit Courts of Appeals to expressly considered the question that *Pioneer* stated the applicable standard in Rule 4 cases. *Id.* at 195 & 197, 116 S.Ct. 600. If anything, *Stutson* suggests that failure to consider the *Pioneer* standard for excusable neglect in a Rule 4 case is reversible error.

Perhaps even more strange is plaintiff's counsel's suggestion that the precedential value of *Pioneer* is somehow undercut by the retirement of two justices in the majority in that decision. If that is so, how much less precedential value is to be afforded decisions of the Supreme Court rendered by a majority of justices who are now dead? Imagine the ripples of shock and consternation of judges and constitutional scholars as they realize that no decision of the Supreme Court rendered prior to approximately 1960 has any precedential value, because the justices who rendered those decision are either retired or dead, or realize that *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), is no longer the law! Clearly, plaintiff's counsel's conception of the viability of precedent is unsupportable and his passing argument that *Pioneer* does not state the applicable standard here was ill-conceived. Just as clearly, it can now be said that counsel for both parties have something in this case they wish they had said or done differently.

district court denied the Finks' motion based on our decision in *Vogelsang v. Patterson Dental Co.*, 904 F.2d 427 (8th Cir.1990). In *Vogelsang*, we stated, " '[E]xcusab[le neglect] will not be found when the failure to [file a timely] appeal is caused by palpable oversight, administrative or clerical errors by the attorney or the attorney's staff, [or] an attorney's busy schedule....' " *Id.* at 431 (quoting 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 204.13[1.–3], at 4–107 (2d ed.1989)).

Although Vogelsang supports the conclusion that the Finks have not shown excusable neglect, the Supreme Court recently established a more flexible analysis of the excusable neglect standard in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court in *Pioneer* held an attorney's inadvertent failure to file a proof of claim can constitute excusable neglect under Bankruptcy Rule 9006(b)(1). Id. at 383, 113 S.Ct. at 1492. Interpreting the plain meaning of the phrase excusable neglect, the Court concluded, "Congress plainly contemplated that the courts would be permitted, [when] appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388, 113 S.Ct. at 1495. The Court held that when analyzing a claim of excusable neglect, courts should "tak[e] account of all relevant circumstances surrounding the party's omission," including: "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 394–95, 113 S.Ct. at 1498; *see In re Jones Truck Lines, Inc. v. Foster's Truck & Equipment Sales, Inc.*, 63 F.3d 685, 687 (8th Cir.1995).

We believe the *Pioneer* interpretation of excusable neglect under the Bank-

ruptcy Rules also applies when interpreting excusable neglect under Federal Rule of Appellate Procedure 4(a)(5). *See Pioneer*, 507 U.S. at 387 n. 3, 113 S.Ct. at 1494 n. 3 (comparing interpretations of excusable neglect under Fed. R.Bankr.P. 9006(b)(1) with decisions under Fed.R.App.P. 4(a)(5)). " 'Because the [*Pioneer*] Court's analysis of what constitutes "excusable neglect" in the bankruptcy context rested on the plain meaning of the terms, there is no reason that the meaning would be different in the context of Fed.R.App.P. 4(a)(5).' " *Reynolds v. Wagner*, 55 F.3d 1426, 1429 (9th Cir.1995) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir.1994), *cert. denied*, 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995)); *see Virella–Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 454 n. 3 (1st Cir.1995); *see also United States v. Clark*, 51 F.3d 42, 44 (5th Cir. 1995) (applying *Pioneer* under Fed. R.App.P. 4(b)); *United States v. Hooper*, 9 F.3d 257, 259 (2d Cir.1993) (same). To the extent that our past decisions interpreting excusable neglect apply an unduly strict standard in conflict with *Pioneer*, they are no longer controlling precedent. Nevertheless, our earlier opinion in *Vogelsang* does recognize some factors with respect to mailing that remain relevant in an excusable neglect analysis. *See Vogelsang*, 904 F.2d at 431–32 (quoting *Houston v. Lack*, 487 U.S. 266, 271, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988)).

*Fink*, 65 F.3d at 723–24. The court suggested at oral arguments that the Elevators' counsel must demonstrate "excusable neglect" on two levels: first, his failure to recognize that this case was not a matter in the Southern District; and second, once he realized it was not a Southern District matter, his mere mailing of the notice of appeal to the correct district, when mailing does not satisfy the deadline for a notice of appeal, *see Vogelsang v. Patterson Dental Co.*, 904 F.2d 427, 430 (8th Cir.1990); Fed.

R.App.P. 25(a)(2)(A),[3] and other means for hand-delivering a notice of appeal to the proper court were available.[4]

The court agrees with plaintiff that there is little basis for the Elevators' counsel's confusion about the proper district in which to file a notice of appeal. Although this Northern District case was tried in the Southern District with Southern District jurors, at no time did the court transfer, or suggest that it was transferring, this case to the Southern District. On the record, at the beginning of trial, the court confirmed that the parties consented to trying the case in Des Moines, even though it was a Northern District matter, and that they waived any venue problem with trying a Northern District case in the Southern District of Iowa using Southern District jurors. Furthermore, the instructions, verdict form, and judgment all indicated that this was a Northern District matter. Even the Elevators' own motion for a new trial was captioned as a matter in, and filed with the Clerk of, the Northern District, as was this court's ruling on that motion. Counsel stated simply that his staff had properly filed the motion for new trial in the right place, but he was not so fortunate when he attempted to file his own notice of appeal. Ultimately, however, the court concludes that counsel timely recognized his error, because on the day of the deadline, he realized which court was the proper one to entertain his notice of appeal.

■ Therefore, the "excusable neglect" question here boils down to whether, once counsel realized his mistake about the proper district, counsel's mailing of the notice of appeal to the correct court, and its untimely arrival, constituted "excusable neglect." The court believes—particularly in light of the liberalized standards of *Pioneer* and *Fink*—that it would be "armchair quarterbacking" for the court to conclude that it was not "excusable neglect" for the Elevators' counsel to fail to recognize that mailing was not adequate filing, even in light of the specific language of Fed.R.App.P. 25(a)(2)(A) and *Vogelsang*, 904 F.2d at 430. Rather, once counsel realized his mistake, he did attempt to rectify his error by some means. Counsel's mistake in filing the notice was clearly the result of "inadvertence, mistake, or carelessness," *see Fink*, 65 F.3d at 724 (citing *Pioneer*, 507 U.S. at 388, 113 S.Ct. 1489), and was just as clearly an error made in "good faith," not in an attempt to delay the process or escape the requirements of the rules. *See id.* at 724 (citing *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489).

Furthermore, taking into account "all relevant circumstances surrounding the party's omission," the court finds that "the danger of prejudice to the [nonmovant]," *see id.* (citing *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489), here Larson, is slight, even though Larson's counsel asserts that he had no expectation or hint that the Elevators were intending to appeal. Larson's counsel could reasonably have expected that the same grounds asserted in a new trial motion would also be asserted on an appeal. A further consideration here is "the length of the delay and its potential impact on judicial proceedings," *see id.* (citing *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489), and on this point, Larson's counsel admits that he received the notice of appeal on July 13, 1999, only the day after the deadline, such that he had not "rested" on an expectation that no appeal would be filed, and there was no real delay to or impact on the judicial proceedings. Al-

---

3. An exception is the "prison mailbox rule." *See* Fed.R.App.P. 25(a)(2)(C). "Under the prison mailbox rule, a notice of appeal is deemed timely filed when an inmate deposits the notice in the prison mail system prior to the expiration of the filing deadline." *Moore v. United States*, 173 F.3d 1131, 1135 (8th Cir. 1999).

4. Other means for timely delivery of the notice would have included faxing the notice of appeal to another attorney in Sioux City for filing by hand here, or driving to Sioux City or Cedar Rapids to hand deliver a copy of the notice to the Clerk of Court or the Judge at the appropriate office during office hours or at the respective person's residence, because the court is technically in continuous session.

though "the reason for the delay," *see id.* (citing *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489), may not be substantial here, it certainly falls within the category of things that can happen despite best intentions, and the weakness of the reasons should be balanced against the limited prejudice and delay. *See id.* ("excusable neglect" must be considered by taking into account "all relevant circumstances surrounding the party's omission").

The court recognizes that cases cited by the plaintiff, *Midwest Employers Cas. Co. v. Williams,* 161 F.3d 877 (5th Cir.1998), and *Prizevoits v. Indiana Bell Tel. Co.,* 76 F.3d 132 (7th Cir.1996), might suggest a different result is appropriate, but neither is controlling precedent, and this court's balance of the relevant factors in this case suggests the appropriateness of its conclusion. Nor does the court find that the factors with respect to mailing stated in the decision of the Eighth Circuit Court of Appeals in *Vogelsang,* 904 F.2d at 431–32, which remain relevant in an excusable neglect analysis, *see Fink,* 65 F.3d at 724, require a different result. The Elevators' counsel knew by July 14, 1999, just two days after mailing, that his notice of appeal had been filed by the court, so that he cannot be chastised for failing to monitor delivery of his notice after committing it to the vagaries of the mail delivery system. *Compare Vogelsang,* 904 F.2d at 431–32 (quoting *Houston,* 108 S.Ct. at 2382–83).

In these circumstances, the Elevators' August 2, 1999, motion for an extension of time for filing a notice of appeal under Federal Rule of Appellate Procedure 4(a)(5) is granted. The Elevators' notice of appeal, filed July 14, 1999, is deemed timely filed.

**IT IS SO ORDERED.**